UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:09-CR-144 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| DONALD FILLERS, DAVID WOOD, ) | |
| JAMES MATHIS, MATHIS COMPANIES, ) | |
| INC., and WATKINS STREET ) | |
| PROJECT, LLC. ) | |

## MEMORANDUM

Before the Court are motions by Defendants James Mathis, Donald Fillers, and Watkins Street Project, LLC, to strike Count One of the indictment for insufficiency (Court File Nos. 50, 62, 71); a motion by Defendant David Wood to strike Counts One and Three of the indictment for insufficiency and to consolidate Counts Three, Four, Five, and Six for multiplicity (Court File No. 94); motions by Defendants Donald Fillers and Watkins Street Project, LLC, to strike Count Three of the indictment for insufficiency and to consolidate Counts Three, Four, Five, and Six for multiplicity (Court File Nos. 56, 69); a motion by Defendant James Mathis to strike Count Three of the indictment for insufficiency or to consolidate Counts Three and Four for multiplicity (Court File No. 65); and motions by Defendants Donald Fillers, James Mathis, Watkins Street Project, LLC, and David Woods (collectively "Defendants") to strike portions of the indictment as surplusage (Court File Nos. 54, 60, 73, 92). The Government filed a consolidated response (Court File No. 101) to which Defendants replied (Court File Nos. 122, 123, 126, 139, 140, 143, 144, 147).

Having carefully considered the motions and arguments of the parties and the applicable law, for the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants Fillers's and Watkins Street Project, LLC's motions to strike surplusage (Court File Nos. 54, 73),

and will **DENY** Defendants' remaining motions (Court File Nos. 50, 56, 60, 62, 65, 69, 71, 92, 94).

I.      **RELEVANT FACTS**

Defendants are under indictment for conspiracy to violate the Clean Air Act and defraud the United States in violation of 18 U.S.C. § 371, failure to provide written notification prior to demolition in violation of 42 U.S.C. § 7413(c)(1) and 18 U.S.C. § 2(a), commencement of demolition prior to abatement in violation of 42 U.S.C. § 7413(c)(1) and 18 U.S.C. § 2(a), failure to have a trained individual present during demolition in violation of 42 U.S.C. 7413(c)(1) and 18 U.S.C. § 2(a), failure to keep regulated asbestos-containing material ("RACM") properly wetted in violation of 42 U.S.C. § 7413(c)(1) and 18 U.S.C. § 2(a), failure to properly lower RACM in violation of 42 U.S.C. § 7413(c)(1) and 18 U.S.C. § 2(a), failure to properly dispose of RACM in violation of 42 U.S.C. § 7413(c)(1) and 18 U.S.C. § 2(a), and obstruction of justice in violation of 18 U.S.C. §§ 1519 and 2 (Court File No. 1). Defendants James Mathis, Donald Fillers, and David Wood are also charged with making false statements in violation of 18 U.S.C. § 1001(a)(2).

II.     **STANDARD OF REVIEW**

A Federal Rules of Criminal Procedure Rule 12(b) motion that presents a legal challenge to an indictment requires a court to determine the validity of the indictment or a particular count:

> An indictment adequately charges an offense if it (1) includes the elements of the offense intended to be charged, (2) notifies the defendant of "what he must be prepared to meet," and (3) allows the defendant to invoke a former conviction or acquittal in the event of a subsequent prosecution. *Russell v. United States*, 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962); *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992); *United States v. Vanover*, 888 F.2d 1117, 1120 (6th Cir. 1989). Additionally, "[i]n an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully,

> directly, and expressly, without any uncertainty, set forth all of the elements necessary to constitute the offence intended to be punished." *Russell*, 369 U.S. at 765, 82 S. Ct. 1038 (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L. Ed. 1135 (1881)).

*United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 579 (6th Cir. 2002). An indictment returned by a "legally constituted and unbiased grand jury" is presumed valid. *Costello v. United States*, 350 U.S. 359, 363 (1956). Unless there is a substantial claim the grand jury was biased or illegally constituted, the indictment itself, if valid on its face, is sufficient to require a trial on the merits. *United States v. Calandra*, 414 U.S. 338, 345 (1974); *United States v. Short*, 671 F.2d 178, 182-83 (6th Cir. 1987).

## III. DISCUSSION

### A. Motions to Strike Count One of the Indictment

Defendants contend Count One is insufficient because it charges Defendants with conspiracy to commit a crime against the United States and to defraud the United States. Defendants rely on *United States v. Minarik*, 875 F.2d 1186 (6th Cir. 1989), and related cases for the proposition the government cannot charge both a conspiracy to defraud and a conspiracy to commit a substantive offense. Although Defendants candidly admit *Minarik* has been restricted by subsequent cases in the Sixth Circuit, they argue this case falls within those confines.

Section 371 of Title 18 of the United States Code criminalizes a conspiracy "either to commit any offense against the United States, or to defraud the United States." 18 U.S.C. § 371. The elements of a conspiracy under § 371 are "(1) an agreement to accomplish an illegal objective against the United States; (2) one or more overt acts in furtherance of the illegal purpose; and (3) the intent to commit the substantive offense," which is to defraud the United States where a

3

conspiracy to defraud is charged. *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005) (citing *United States v. Khalife*, 106 F.3d 1300, 1303 (6th Cir. 1997)). Defendants contend *Minarik* prohibits the government from charging a conspiracy to defraud the United States where the fraudulent activity itself violates a specific statute which the defendants are also charged with conspiring to violate.

In *Minarik*, the court overturned a jury verdict finding the defendants guilty of conspiracy to defraud the United States where the prosecution repeatedly changed the theory of the case throughout the proceeding before ultimately resting, on appeal, on the theory the defendants conspired to conceal assets from the Internal Revenue Service after receiving notice of assessment for taxes owed. 875 F.2d at 1187. Recognizing a conspiracy under § 371 could be broad enough to be covered by both the defraud clause and the offense clause, the *Minarik* court reasoned "[o]nly by treating conspiracies to commit specific offenses exclusively under the offense clause of § 371 can multiple convictions and unnecessary confusion be avoided." *Id.* at 1194. Thus, the court found the conviction for conspiracy to defraud the United States could not stand where the prosecution's ultimate theory of the case rested on conspiracy to violate a detailed tax statute. *Id.* at 1196.

The Sixth Circuit later recognized the limited applicability of *Minarik*'s holding. *United States v. Mohney*, 949 F.2d 899, 903 (6th Cir. 1991) ("*Minarik*, then, by its own language, as well as by implication, created a limited rule to remedy the particular concerns raised by the facts of that case."). In *Khalife*, the court identified three distinguishing characteristics: the confusion resulting from the prosecution's shifting theories of the case, the limited nature of the act on which the conspiracy to defraud was predicated, and the lack of adequate notice due to the technical nature of the tax statute the defendants were alleged to have violated. 106 F.3d at 1304. Analyzing the case

4

based on those factors, the *Khalife* court determined *Minarik* did not apply.

In this case, as in *Mohney* and *Khalife*, the prosecution has not vacillated among theories of the case. While the indictment in *Minarik* charged the defendants with conspiring "to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Department of the Treasury," 875 F.2d at 1188, the indictment in this case uses much more specific language and identifies "the agency impeded and explain[s] how, and by whom, the agency was impeded." *Mohney*, 949 F.2d at 904. Count One of the indictment details the alleged impediment of the Environmental Protection Agency (EPA), Air Pollution Control, and the Department of Labor, by having incomplete surveys conducted to mislead authorities as to the amount of RACM at the demolition site, providing false and misleading 10-day notifications, failing to have licensed and trained persons present during the asbestos abatement and demolition activities, and making false statements to inspectors, regulators and law enforcement personnel (Court File No. 1). As such, the indictment gives more than sufficient notice to Defendants as to the offense charged and provides Defendants with sufficient information with which Defendants can prepare a defense to the charges. Unlike *Minarik*, the indictment is not ambiguous as to the charges against Defendants and does not present them "with a moving target as they attempt[] to prepare their defense." 875 F.2d at 1189.

Further, the indictment in this case rests on a much broader scope of activity than in *Minarik*. Whereas "the *Minarik* defendants' conduct consisted of one limited act of concealing the proceeds of a real estate transaction to prevent a levy upon the proceeds by the IRS," *Khalife*, 106 F.3d at 1304, here Defendants' alleged conduct consists of numerous acts over an extended period of time: conducting partial asbestos surveys to mislead authorities as to the amount of asbestos actually present, providing false 10-day notifications to Air Pollution Control, handling and disposing of

5

asbestos improperly, hiring unlicensed homeless people to perform asbestos work, preparing fraudulent documents, and making false statements to authorities. Unlike in *Minarik*, where the defendant's scant activity was incommensurate with the court's conception of a general conspiracy to defraud, *see id.*, Defendants' alleged activity in this case is extensive enough to support such a charge, and at the same time, encompasses alleged acts that also could amount to violations of specific statutory provisions.

Finally, the indictment in this case gives adequate notice to Defendants of the alleged violations. In *Minarik*, criminal liability turned on the precise duties of a taxpayer who, "before levy, engages in otherwise legitimate activities that make ultimate [tax] collection more difficult." *Minarik*, 875 F.2d at 1196. The *Minarik* court described these duties as "technical and difficult to discern." *Id*. Allowing such abstruse duties to form the foundation of a conspiracy to defraud charge, the court suggested, invites prosecutors to "allow the facts to define the crime through hindsight after the case is over," thereby depriving defendants of adequate notice of what, precisely, they are alleged to have done wrong. *Id*. The court reasoned in cases where a Congressional statute closely defines such technical duties, taking a conspiracy "out of the defraud clause and plac[ing] it in the offense clause" is the best way to ensure prosecutors and courts "determine and acknowledge exactly what the alleged crime *is*." *Id*.

In contrast to *Minarik*, Defendants in this case have adequate notice of exactly what the alleged crime is: conspiring to defraud the United States by impeding and impairing the enforcement of federal environmental law with respect to disposal of the asbestos in the Standard Coosa Thatcher textile plant. Whereas the indictment in *Minarik* only provided the defendants with a bare bones description of the alleged conspiracy to defraud, the indictment in this case provides Defendants

6

with a detailed description of the means by which they are alleged to have obscured the amount of asbestos present, surreptitiously disposed of asbestos, and lied to investigators, all with the aim of avoiding the burden of federal environmental compliance. The instant case is further distinguishable from *Minarik* in that the heart of the alleged conspiracy to defraud does not turn on duties which are "technical and difficult to discern," *id.*, but on duties which are clear. Defendants are not alleged to have engaged in "otherwise legitimate activities" that are criminal only insofar as they may make some distinct federal end more difficult, *see id.* (where otherwise lawful bank deposits were allegedly structured to avoid IRS attention), but in conduct that itself directly violates federal law and regulation. Here, as in *Khalife*, "[b]ecause the duties in this case are not as technical as those in *Minarik* and because the present defendants received specific notice of the crimes charged, *Minarik* is inapposite." *Khalife*, 106 F.3d at 1304.

For the reasons detailed above, Count One of the indictment properly charges conspiracy to commit a crime against the United States and to defraud the United States. Accordingly, Defendants' motions to strike Count One for insufficiency will be denied.

### B. Motions to Strike Count Three of the Indictment

Defendants contend Count Three of the Indictment does not state an offense, and should therefore be stricken. Count Three charges Defendants with violating 42 U.S.C. § 7413(c)(1) and 18 U.S.C. 2(a) in that Defendants were owners and operators of a demolition activity containing a jurisdictional amount of RACM, who knowingly commenced demolition activities before all RACM was removed, thereby violating asbestos work practice standards. The asbestos work practice standard to which Count Three refers is 40 C.F.R. § 61.145(c)(1), which requires owners or operators of demolition or renovation activities containing a jurisdictional amount of RACM to:

7

Case 1:09-cr-00144-CLC-SKL   Document 213   Filed 09/14/10   Page 7 of 18
PageID #: 1267

> Remove all RACM from a facility being demolished or renovated before any activity begins that would break up, dislodge, or similarly disturb the material or preclude access to the material for subsequent removal.

After stating this general rule, the regulation goes on to list four narrow exceptions where RACM does not need to be removed before demolition. 40 C.F.R. § 61.145(c)(1)(i)-(iv).[1] Count Three of the indictment does not specifically allege these exceptions are inapplicable in Defendants' case. Therefore, Defendants argue, Count Three does not allege a crime since it does not foreclose the possibility of Defendants' activity being covered by one of the exceptions, and thus being lawful.

While an indictment count must be struck if it does not allege a crime, *see United States v. Combs*, 369 F.3d 925, 934 (6th Cir. 2004) (reversing a conviction where the indictment mistakenly utilized one element from each of two distinct offenses, and therefore could not "be reasonably construed to have charged [the defendant] with a crime"), an indictment need not recite and rule out all possible defenses. *See, e.g.*, *United States v. Titterington*, 374 F.3d 453, 456 (6th Cir. 2004) ("An indictment . . . founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . . It is incumbent on one who relies on such an exception to set it up and establish it.") (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922)); *United States v. Sisson*, 399 U.S. 267, 288 (1970); *Evans v. United States*, 153 U.S. 584, 590 (1894). Rather, an indictment is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charge against which he must defend, and enables him to plead double jeopardy in future prosecutions for the same offense. *See Mohney*, 949 F.2d at 903.

---

[1] These exceptions include cases where the RACM is not friable and not in poor condition or likely to become crumbled during demolition, where the RACM is encased in concrete, and where the RACM was not accessible for testing and therefore not discovered until after demolition began.

8

In this case, Count Three of the indictment satisfies the sufficiency standard set forth in *Mohney* and elsewhere. It alleges Defendants "were owners and operators of a demolition activity to wit, Standard Coosa (a facility containing a jurisdictional amount of RACM . . . ), [who] knowingly commenced demolition activities before all RACM was removed from Standard Coosa" (Court File No. 1). This language corresponds to the elements of 40 C.F.R. § 61.145(c)(1) and clearly alleges a violation of the general provision requiring owners or operators of a demolition activity to remove all RACM before beginning activity which would "break up, dislodge, or similarly disturb" that RACM.[2] Count Three, read in conjunction with the "Manner & Means" and "Overt Acts" sections of the indictment, leaves no question of what the charge is against which Defendants must defend. Furthermore, it is for Defendants to "set up and establish" any exceptions to the general provision of § 61.145(c)(1) upon which they wish to rely. *See Titterington*, 374 F.3d at 456. The United States is not obligated to "negative the matter of an exception made by a proviso or other distinct clause." *Id.* Failure to specifically allege the narrow exceptions of § 61.145(c)(1)(i)-(iv) do not apply to Defendants is no infirmity in the indictment.

As explained above, Count Three of the indictment plainly states an offense. Accordingly, Defendants' motions to strike Count Three for failure to state an offense will be denied.

### C. Motions to Consolidate Counts of the Indictment for Multiplicity

Defendants Fillers, Wood, and Watkins Street Project, LLC move the Court to consolidate Counts Three, Four, Five, and Six for multiplicity, and Defendant Mathis moves the Court to

---

[2]Defendants' protestation that the indictment uses the words "demolition activities" while § 61.145(c)(1) says "break up, dislodge, or similarly disturb" is not well taken. The indictment makes it clear that Defendants' alleged "demolition activities," performed with knives, chisels, saws, fork lifts, and by hand, were precisely ones which would and did "break up, dislodge, or similarly disturb" RACM.

consolidate Counts Three and Four for multiplicity. Each of these Counts alleges a different violation of asbestos work practice standards promulgated by the EPA pursuant to the Clean Air Act. 42 U.S.C. §§ 7401 *et. seq.* These standards are contained in the National Emission Standards For Hazardous Air Pollutants (NESHAPs). *See* 40 C.F.R. § 61. Count Three charges Defendants with violating NESHAPs by commencing demolition prior to abatement, *see* § 61.145(c)(1); Count Four charges Defendants with violating NESHAPs by failing to have a trained individual present, *see* § 61.145(c)(8); Count Five charges Defendants with violating NESHAPs by failing to properly wet RACM, *see* §§ 61.145(c)(2)(i)-(6); and Count Six charges Defendants with violating NESHAPs by failing to lower RACM to the ground properly, *see* §§ 61.145(c)(2)(ii)-(6). Although each count alleges a distinct violation of NESHAPS, the criminality of all these violations is based upon 42 U.S.C. § 7413(c), which sanctions noncompliance with regulations promulgated pursuant to the Clean Air Act. Defendants claim since each count turns upon the same statute, the counts all allege a single offense and are therefore multiplicitous.

Multiplicity occurs where a single offense is charged in more than one count of an indictment. *See United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008); *United States v. Taylor*, No. 1:04-CR-160, 2006 WL 3489043, at *1 (E.D. Tenn. Dec. 4, 2006). The critical concern with multiplicity "stems from the risk it may subject a person to multiple sentences for a single offense and the danger of unduly prejudicing the fact finder by giving the false impression the defendant has committed several offenses where only one has been committed." *Taylor*, 2006 WL 3489043, at *1. "An indictment is multiplicitous where two or more counts cover the same criminal behavior." *United States v. Cole*, No. 3:07-00093, 2007 WL 2600920, at *5 (M.D. Tenn. Sept. 10, 2007). The general test for whether multiple counts cover the same criminal behavior is "whether

10

each [count] requires proof of a fact which the other does not." *Swafford*, 512 F.3d at 844 (quoting *United States v. Davis*, 306 F.3d 398, 417 (6th Cir. 2002)).

In the present case, Counts Three through Six are not multiplicitous because they do not cover the same criminal behavior. Although the elements of these counts are the same insofar as they all allege violations of 42 U.S.C. § 7413(c), each count alleges a separate violation of § 7413(c) and is based on logically distinct behavior. Furthermore, each count requires proof of additional facts which the other counts do not. Count Three requires proof Defendants began demolishing Standard Coosa before removing all RACM. Count Four requires proof Defendants failed to have a trained individual present during the demolition process. Count Five requires proof Defendants failed to adequately wet friable asbestos during their removal. And Count Six requires proof Defendants did not carefully lower the removed RACM to the ground. It is not tenable to view all the alleged criminal behavior as an undifferentiated single offense of "noncompliance with NESHAPs work practice standards." By this logic, many indictments charging multiple counts of violating a single statute could be construed as multiplicitous simply by aggregating a criminal course of conduct into a monolithic general activity. In contrast to this approach, courts look at the actual facts required to be proven by each count rather than whether it is possible to describe all criminal conduct at such a level of generality that the conduct appears to merge. *See, e.g.*, *United States v. Sparks*, No. 06-20330, 2007 WL 4180961, at *2 (E.D. Mich. Nov. 27, 2007) (holding multiple counts of distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) were not multiplicitous where each count required evidence which the other did not); *Cole*, 2007 WL 2600920, at *6 ("Charges alleging violations of 18 U.S.C. § 1001 are not mulutiplicitous where each count requires proof of a different set of facts."); *Taylor*, 2006 WL 3489043, at *4 ("[T]he Court is

11

Case 1:09-cr-00144-CLC-SKL   Document 213   Filed 09/14/10   Page 11 of 18
PageID #: 1271

not persuaded the Indictment is multiplicitous. As discussed above, there are elements in each count which are not found in the other counts. Obviously, there is some overlap. That is not uncommon . . . where one course of conduct gives rise to several different charged offenses."); *see also United States v. Laimeche*, 56 Fed. App. 835, 836 (9th Cir. 2003) ("Although Counts 1 and 2 both charge Laimeche with violating 42 U.S.C. § 408(a)(7)(B), the counts are not multiplicitous because each count requires proof of a different set of facts. . . . Counts 3 and 5 are not multiplicitous because, although they although they both charge Laimeche with violating 18 U.S.C. § 1001, each count requires proof of a different set of facts.").

For the reasons detailed above, Counts Three through Six of the indictment are not multiplicitous. Accordingly, Defendants' motions to consolidate these Counts will be denied.

### D. Motions to Strike Portions of the Indictment as Surplusage

Defendants all move this Court to strike language from the indictment as surplusage. Defendants essentially object to the same language, though there are a few variances among the motions. The government opposes these motions, with the exception of a typographical error appearing in Count Nine of the indictment.

Defendants first object to paragraph "f" on page 2 of the indictment, which quotes the stated purpose of the Clean Air Act ("to protect and enhance the quality fo [sic] the Nation's air resources so as to promote the public health and welfare . . . ."), states Congress and the EPA "have determined that asbestos is a 'hazardous' air pollutant," and cites a Congressional finding stating "science has established no minimum level of exposure to asbestos fibers which is considered safe to exposed persons." Defendants claim the effect of this language is to create a sense of fear unrelated to the charges since no charge requires proof of physical harm.

12

Defendants object to paragraph "h" on pages 2-3 insofar as it claims the National Emission Standards for Hazardous Air Pollutants are "commonly known" as NESHAPs. Defendants assert this acronym is not, in fact, commonly known to the average person. Defendants also find prejudicial the line in the same paragraph saying the EPA established work practice standards which must be followed "to ensure the *safe and proper* handling . . . of asbestos . . . ." (emphasis added).

Defendants object to paragraph "m" on page 3 insofar as it states the Clean Air Act's asbestos work practice standards aim "to prevent emissions of particulate asbestos material into the air," claiming this language draws attention to risk of harm which is not at issue in this case.

Defendants object to the reference in paragraph "n. iv" on page 6 to the "Asbestos Hazard Emergency Response Act of 1986 (hereinafter 'AHERA')." Defendants believe the title Congress chose for this Act is prejudicial, and suggest it should be referred to only by its United States Code references.

Defendants object to paragraph 2 on page 8 in Count One of the indictment, which charges Defendants with impeding and impairing the governmental functions of the Department of Labor and the Occupational Safety and Health Administration in enforcing federal "safety and health" regulations "covering certain workers throughout the United States." Defendants all claim the reference to "safety and health" is prejudicial; Defendant Mathis alone claims the statement "covering certain workers throughout the United States" is prejudicial.

Defendants object to paragraph 4 on page 9 in Count One of the indictment, which alleges Watkins Street Project, LLC, purchased every commercial building on the block, with the exception of a "day-care center and nursery" located on the same block as Standard Coosa. Defendants argue the proximity of the day-care center and nursery is irrelevant and prejudicial.

13

Defendant Wood objects to paragraph 15 on page 11 in Count One of the indictment, which states "Defendants WSP and DONALD FILLERS hired Defendant DAVID WOOD to oversee all salvage operations at Standard Coosa." Defendant Wood requests this paragraph be stricken because it does not allege illegal activity.

Similarly, Defendant Wood asks that paragraph 22 on page 12 in Count One of the indictment be stricken in its entirety. This paragraph states Defendant Wood hired a crew of "day-laborers, and other vulnerable individuals" to assist him and Defendant Fillers with salvage operations at Standard Coosa, and further alleges none of these individuals were properly trained or qualified to conduct "such asbestos-abatement activities." According to Defendant Wood, since "salvage operations," without more, are not illegal activity, this paragraph fails to allege illegal activity. Furthermore, Defendant Wood contends the phrase "such asbestos-abatement activities" is confusing since, in his view, no such activities have been identified in the indictment. In the alternative to striking the entire paragraph, Defendant Wood requests the word "vulnerable" and the entire sentence containing the phrase "such asbestos-abatement activities" be stricken. In the alternative to striking this sentence, Defendant Wood requests the word "such" be stricken. Defendant Fillers also objects to the word "vulnerable" in this paragraph, and asks that the phrase "and other vulnerable individuals" be stricken as irrelevant and prejudicial.

Defendants Fullers and Watkins Street Project, LLC, object to the random insertion of the name "JAMES MATHIS" in paragraph 49 on page 21 in Count Nine of the indictment. Count Nine is against Defendant Fillers only, and the government concedes James Mathis' name was inserted due to typographical error.

Finally, Defendant Wood objects to the entirety of paragraphs 51(c) and (c)' on page 22 in

14

Count Ten of the indictment. This Count charges Defendant Wood with making a false statement, namely, telling an EPA agent he did not accompany Battlefield Abatement, Inc. personnel around the Standard Coosa facility when they were formulating their estimate of the amount of RACM present (¶ 51(c)), when in truth and fact he did accompany the Battlefield personnel (¶51(c)'). Defendant Wood contends these paragraphs are irrelevant since the indictment does not allege any criminal activity with respect to Battlefield Abatement, Inc.'s formulation of an estimate.

According to Fed. R. Crim. P. 7(d), "[t]he court on motion of the defendant may strike surplusage from the indictment or information." "The striking of language from an indictment as being surplusage addresses itself to the sound discretion of the district court." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974) (citation omitted). In *United States v. Moss*, 9 F.3d 543 (6th Cir. 1993), the United States Court of Appeals for the Sixth Circuit stated, *"if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." Id.* at 550 (*quoting United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989)).

Upon review of the indictment and Defendants' motions and memoranda, the Court concludes none of the language of the indictment challenged by Defendants need be stricken pursuant to Fed. R. Crim. P. 7(d), with the exception of the concededly mistaken reference to Defendant Mathis in Count Nine.

Defendants' concern straightforward recital of the basic purpose of the Clean Air Act and related regulations will lead the jury to erroneously conclude Defendants' have caused environmental harm or risk of harm is unwarranted. No such harm has been alleged or improperly implied in the indictment. Similarly unwarranted is Defendants' fear the Asbestos Hazard

15

Emergency Response Act of 1986 is titled too provocatively for jury disclosure. Defendants' suggestion Congressional Acts be referred to simply by their statutory reference numbers is likely to cost significantly more in jury confusion and time than it saves in prejudice. In protesting the National Emission Standards for Hazardous Air Pollutants are not "commonly known" as NESHAPs since many lay people are unaware of this acronym, Defendants ignore that, in context, "commonly known" here means "commonly known in the industry."

Defendants' concern with the reference to the "day-care center and nursery" is more reasonable. However, language in an indictment is not surplusage simply because it is prejudicial. "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *Moss*, 9 F.3d at 550. Here, according to the government, it intends to call employees from the day-care center and nursery as eye-witnesses at trial. During their testimony the jury will surely learn how and from whence they were able to observe Defendants' conduct. Therefore, the language in the indictment regarding the day-care center and nursery is information which the government hopes to properly prove at trial, and cannot be considered surplusage. The reference to "day laborers and other vulnerable people" is not surplusage for similar reasons. The government alleges these individuals comprised indigents, drug addicts, and street people. The government plans to call several of them to testify as witnesses at trial. Since their backgrounds will be information proved at trial, the indictment's mild descriptor "vulnerable" is not surplusage.

Defendant Wood's objections to paragraphs 15 and 22 of Count One due to their failure to allege illegal activity are unpersuasive. These paragraphs fall under the "Overt Acts" heading of the Count One conspiracy charge. It is well established that overt acts charged in a conspiracy count

16

do not need to be themselves illegal. *See, e.g.*, *United States v. Reifsteck*, 841 F.2d 701, 704 (6th Cir. 1988) ("[E]ach overt act taken to effect the illegal purpose of the conspiracy need not be illegal in itself."); *United States v. Cooper*, 577 F.2d 1079, 1085 (6th Cir. 1978) ("[I]t [is] not necessary that any overt act charged in a conspiracy indictment constitute in and of itself a separate criminal offense."); *see also* Sixth Circuit Dist. Judge's Ass'n, Criminal Pattern Jury Instructions § 3.04(2) (2009 ed.) ("The government does not have to prove . . . that any of these [overt] acts were themselves illegal."). The activities alleged in paragraphs 15 and 22, legality notwithstanding, are therefore properly pleaded, and are not surplusage. Defendant Wood's contention the pronoun "such" causes confusion in the phrase "such asbestos-abatement activities" is also unpersuasive. In the context of the indictment, it is clear to which asbestos-abatement activities the clause refers.

Finally, the language in Count 10 concerning Defendant Wood's statements regarding Battlefield Abatement, Inc. is not surplusage because it is relevant to the charge of false statements and is evidence the government hopes to prove at trial. That the indictment does not allege criminal activity with respect to Battlefield's asbestos survey is irrelevant. Count Ten alleges Defendant Wood lied to an EPA agent about whether he accompanied Battlefield personnel during their survey. To prove this charge the government will have show a disparity between what Defendant Wood said, and what he in fact did. The paragraphs Defendant Wood wishes stricken concern precisely this disparity.

Accordingly, Defendants' motions will be granted in part to the extent the indictment refers to "JAMES MATHIS" in paragraph 49 on page 21 in Count Nine of the indictment, but denied in all else.

17

## IV. CONCLUSION

For the above stated reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants Fillers' and Watkins Street Project, LLC's motions to strike surplusage (Court File Nos. 54, 73). The Court will **STRIKE** from the indictment the words "JAMES MATHIS" in paragraph 40 on page 21 of Count Nine. The Court will **DENY** the motions to strike surplusage in all other respects, and will **DENY** the remaining motions (Court File Nos. 50, 56, 60, 62, 65, 69, 71, 92, 94).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**