UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No: 1:09-CR-144 |
| v. ) | |
| ) | |
| DONALD FILLERS ) | Judge Curtis L. Collier |
| ) | |

**MEMORANDUM & ORDER**

Before the Court is Defendant Donald Fillers' ("Defendant") motion to remain on bond pending appeal (Court File No. 515). The government opposed Defendant's motion (Court File No. 528). For the reasons discussed below, the Court will **DENY** Defendant's motion (Court File No. 515).

**I.    BACKGROUND**

Due to numerous filings in this case, the Court has addressed the relevant facts multiple times and will not repeat them here (*See, e.g.*, Court File Nos. 219, 243, 310, 376, 401, and 402). Defendant was charged with conspiracy to defraud the United States and violate the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.*, as well as with various violations of the CAA's asbestos work-practice standards. He was additionally charged with making false statements and obstruction of justice (Court File No. 1). The government called a number of witnesses over the course of a three-week trial, and at the close of the government's proof, Defendant filed a motion for acquittal pursuant to Fed. R. Crim. P. 29. The Court reserved ruling at that time. On January 30, 2012, the jury returned a verdict of guilty on all counts (Court File Nos. 385). On March 1, 2012, the Court denied Defendant's motion for acquittal (Court File Nos. 402, 403). On March 13, 2012, Defendant filed a motion for a new trial on Count Eleven (Court File No. 406). The Court denied Defendant's

motion on May 21, 2012 (Court File No. 424). From September 20 to October 1, 2012, the Court held a six-day sentencing hearing in this case after which it sentenced Defendant to 48 months in prison, a $20,000 fine, and, as a condition of supervised release, restitution in the amount of $27,899.10.

## II.     ANALYSIS

A judicial officer shall order a person who has been found guilty of an offense and sentenced to a term of imprisonment be detained, unless certain conditions are met. 18 U.S.C. § 3143(b). This provision creates a presumption a defendant who is convicted of a crime may not be released pending appeal unless he shows by clear and convincing evidence he is not likely to flee or pose a danger to the community. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). An individual may be released pending appeal if a judicial officer finds by clear and convincing evidence 1) the "person is not likely to flee or pose a danger" to the community, and the appeal is not for the purpose of delay;[1] and 2) the appeal "raises a substantial question of law or fact likely to result in" a reversal, new trial, sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). Defendant contends he is not a danger to the community or a flight risk, and the issues to be raised on appeal constitute substantial questions of law and fact likely to result in a reversal or new trial.

### A.     Not Likely to Flee or Pose a Danger to the Community

The Court finds by clear and convincing evidence Defendant is not likely to flee or pose a danger to the community under 18 U.S.C. § 3143(b)(1)(A). Defendant was released on bond before

---

[1] Defendant argues his appeal is not for the purpose of delay, and the Court agrees.

2

and after trial and complied with the conditions of release and made all necessary court appearances. These factors leads the Court to conclude Defendant satisfies the first prong of the § 3143(b) analysis.

    B.    **Appeal Does Not Raise Substantial Question of Law or Fact**

Under the second prong of the § 3143(b) analysis, an "appeal raises a substantial question when the appeal presents a 'close question or one that could go either way.'" *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (quoting *United States v. Powell*, 761 F.2d 1227, 1233-34 (8th Cir. 1985)). A substantial question is a question that is "either novel," has not been "decided by controlling precedent," or is "fairly doubtful." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985); *see also United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). The Court is not required to find "it committed reversible error" nor must it find the defendant is "likely or probable" to prevail on appeal. *Pollard*, 778 F.2d at 1181-82; *Powell*, 761 F.2d at 1234. The question should, however, be "so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182 (internal citation and quotations omitted). Thus, not only must the question be substantial, but the resolution of the question on appeal must likely result in a reversal, new trial, sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B).

Defendant offers four theories in support of his motion. First, Defendant contends the search of 1700 S. Watkins Street, and related seizures, violated his Fourth Amendment rights. Second, Defendant argues there was insufficient evidence of knowledge to establish any of the counts of

3

conviction. Third, Defendant argues the Court should have granted his motion for a new trial as to Count Eleven, which charged Defendant with obstruction of justice. Finally, Defendant argues the Court should not have assessed a nine-level sentencing enhancement pursuant to USSG § 2Q1.2(b)(2). The Court will address each of these arguments in turn. Because the Court does not find any one of these grounds "raises a substantial question of law or fact likely to result in" a reversal, new trial, sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," 18 U.S.C. § 3143(b), the Court denies Defendant's motion.

### 1. Fourth Amendment rights

Defendant's motion does not engage in any analysis or suggest why this constitutes a "close question or one that could go either way." *Pollard*, 778 F.2d at 1182. However, the Court assumes Defendant refers to a motion to suppress evidence stemming from the warrantless search of the Standard Coosa Thatcher site ("SCT") by the Hamilton County Air Pollution Control Board ("APC") the Court denied before trial (Court File No. 242). An APC investigator was on routine patrol when he came across the SCT site. All but one building on the property had been torn down at this point, and the remaining building was gutted. Debris was strewn across the property and pipes were hanging over the retaining wall that abutted the sidewalk. The investigator recognized the pipe wrapping likely contained asbestos, and noted some of the wrapping had fallen onto the sidewalk. After seeing this, the APC investigator entered the property. The next day he returned and took samples of suspected asbestos-containing materials from the lot, some of which tested positive for asbestos. After he was indicted, Defendant moved to suppress this evidence because the entry onto the property and the seizure of the samples was not supported by a warrant (Court File

4

No. 77).

The Court denied the motion because it found Defendant did not have a reasonable expectation of privacy to the lot, which was unprotected and visible from the sidewalk (Court File No. 244). The Court also found the lot constituted an "open field," and the seizure of the suspected material was lawful under the plain view doctrine. Although the contours of the privacy-based inquiry of the Fourth Amendment, rather than the trespass-based inquiry, are unclear after the Supreme Court's recent decision in *United States v. Jones*, 132 S. Ct. 945 (2012), the Court in *Jones* explicitly reaffirmed the open fields doctrine, *id* at 953. Under this doctrine, "the government's intrusion upon the open fields is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment," *Oliver v. United States*, 466 U.S. 170, 177 (1984), regardless of whether the intrusion is a trespass, *Hester v. United States*, 265 U.S. 57, 58 (1924). "Open fields" include

> any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech. For example . . . a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment.

*Oliver*, 466 U.S. at 180 n.11. "[C]urtilage, [is] the land immediately surrounding and associated with the home." *Id.* at 180.

When the Court first considered the motion, Defendant argued that the SCT site could not be an open field because it was an ongoing commercial enterprise rather than abandoned real estate. He cited his intention to salvage valuable material from the lot, and then sell it for development. However, the open fields doctrine does not require that a piece of property have no live economic function. *See United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292, 1297 (7th Cir. 1976) ("[A] search of open fields, without a search warrant, even if such fields are construed as part of a commercial enterprise, is not constitutionally 'unreasonable.'"). Indeed, farmland is the

5

paradigmatic "open field." *See, e.g., Oliver*, 466 U.S. at 173; *United States v. Smith*, 966 F.2d 1045, 1048 (6th Cir. 1992). Rather than asking whether or not the SCT site had an ongoing commercial purpose, the question for purposes of the open fields doctrine is whether it was an "unoccupied or undeveloped area outside of the curtilage." *Oliver*, 466 U.S. at 180 n.11. The facts show the SCT site clearly qualified as unoccupied and undeveloped. Indeed, the area was recently demolished, save for one building. The lot, then, was certainly outside the area of any "curtilage."

Defendant further argued the seizure of samples from the SCT site was unreasonable without a warrant. The Court determined, because the APC agents were lawfully on site, the seizure was lawful under the plain view doctrine. The plain view doctrine permits warrantless seizures where (1) the officer did not violate the Fourth Amendment in arriving at the place from which the item was seen; (2) the item was in plain view; (3) the incriminating character of the item was immediately apparent; and (4) the officer had a lawful right of access to the object itself. *See Horton v. California*, 496 U.S. 128, 136-37 (1990). Defendant cited a number of cases to show the plain view doctrine is inapplicable to open fields cases as a matter of law. However, as the Court thoroughly explained in its memorandum denying Defendant's objection, not only do those cases fail to support Defendant's argument, but the language of *Horton* suggests there is no open fields exception to the plain view doctrine: "Where the initial intrusion that brings the police within plain view of such an article is supported not by a warrant but by *one of the recognized exceptions to the warrant requirement*, the seizure is also legitimate." 496 U.S. at 135 (emphasis added). The open fields doctrine is "one of the recognized exceptions to the warrant requirement;" hence, a plain view seizure following an open fields intrusion is legitimate.

Because the Court does not believe either Fourth Amendment claim presents a "close

question or one that could go either way," *Pollard*, 778 F.2d at 1182, the Court concludes the first ground for staying on bond pending appeal must fail.

### 2. Insufficient Evidence of Knowledge

Defendant's second theory in support of his motion repeats an argument he made in his motion for acquittal: there was insufficient evidence of knowledge to support a conviction on any of the charges in the indictment. The Court denied this motion when it was made (Court File No. 403), and for similar reasons finds it insufficient to support the motion here. As to the conspiracy to violate of the CAA, there was substantial evidence to suggest Defendant knew asbestos was on the site. Moreover, there was considerable evidence indicating he should have known the entire site had not been properly abated. *Compare* Gov't Trial Ex. 2 (survey conducted by Alternative Actions, Inc. ("AAI") of entire site) *with* Gov't Trial Ex. 7 (permit submitted to APCB giving smaller numbers for size of the site than in the AAI survey). Further, at trial a witness testified he notified Defendant about additional asbestos on-site that had not been removed.

With respect to the actual violations of the CAA, in Defendant's motion for acquittal he attempted to place blame on other parties to absolve himself of any responsibility for violations of the CAA work-practice standards. The Court noted when it denied his motion that Defendant ignored testimony from a number of witnesses explaining how work was carried on in other parts of the facility by workers unattached to the other parties. On Count Three, the discrepancy between a survey of asbestos on the property and the permit sought from APC again provides evidence Defendant was aware of unabated asbestos at the site. On Count Four, the trained individual himself testified workers were at the SCT site removing materials when he arrived and after he left. Another witness similarly testified that removal of asbestos-containing materials happened when no trained

7

individuals were present. Similarly, on Counts Five, Six, and Seven, testimony from several individuals indicated workers at the site were not wetting, properly lowering, and containerizing the RACM as the law required they did.

Count Nine charged Defendant with making a false statement when he verbally amended numbers regarding the area of abatement and amount of asbestos to be abated to Kathy Jones of APC over the telephone. In his motion for acquittal Defendant argued there was no evidence he knew the statement was false; however, there was considerable circumstantial evidence. When considering a sufficiency of the evidence claim, an appeals court will consider all evidence "whether the evidence is direct or wholly circumstantial." *United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir. 1992). Defendant's position as the primary manager of WSP, formed specifically to demolish and salvage materials from the SCT facility, is also circumstantial evidence he would have known of the contents of the survey. Indeed, a comparison of the APC permit after its amendment by Defendant and the survey of asbsestos on the property still indicates a wide gulf in the amount of asbestos to be abated.

Count Eleven charged Defendant with obstruction of justice, because he submitted a report to authorities with several pages missing that detailed the level of asbestos in the SCT site. Defendant filed a motion for a new trial as to Count Eleven (Court File No. 406), which the Court denied (Court File No. 424). Defendant largely refuted credibility of one of the government's key witnesses. However, as the Court said when it denied Defendant's motion, testimony by other witnesses supported Defendant's conviction on this count. Further, appellate courts generally decline to consider the credibility of witnesses in a sufficiency of the evidence challenge. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002).

The above-cited evidence indicates this ground is insufficient to establish a "close question or one that could go either way," *Pollard*, 778 F.2d at 1182, especially considering the "'very heavy burden' upon a defendant making a sufficiency of the evidence challenge," *Chavis*, 296 F.3d at 455. The Court concludes this ground for remaining on bond pending appeal must fail.

### 3. Count Eleven

As his third ground in support of his motion, Defendant argues his motion for a new trial on Count Eleven should have been granted. As stated above, the Court denied his motion for a new trial (Court File No. 424). The Court need not consider whether this presents a "close question" because Defendant must show a substantial question is presented that would "lead to a reversal or an order for a new trial on *all counts* on which imprisonment has been imposed." *Powell*, 761 F.2d at 1233 (emphasis added). After all, "[a]n argument that would produce a reversal of fewer than all such counts would be insufficient in this context, because if one court imposing imprisonment survives, the reason for allowing bail pending appeal, that a defendant should not be imprisoned under a legally erroneous sentence, disappears." *Id.*

### 4. USSG § 2Q1.2(b)(2) Enhancement

Finally, Defendant argues he will appeal the Court's conclusion the nine-level sentencing enhancement in USSG § 2Q1.2(b)(2) was appropriately assessed in the Presentence Investigation Report. The Court departed downward two levels in Defendant's case pursuant to two guided departure provisions in the guidelines. One of those guided departures, in Application Note Six of § 2Q1.2, applies to the enhancement at issue here. Accordingly, the Court assigns one of the departed levels to the § 2Q1.2(b)(2) enhancement. If Defendant were successful on appeal, his offense level would decrease eight offense levels, from 23 to 15, resulting in a guidelines range of

9

18 to 24 months. The Court cannot say the appeal would result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b).[2] This ground also is insufficient to support Defendant's motion.

### III. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's motion for release from custody pending appeal (Court File No. 515). Defendant shall report to custody before 2 p.m. on November 16, 2012 as directed in the Court's judgment.

**SO ORDERED.**

**ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[2] Defendant has been released on bond since his arraignment.